CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 6 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| JARMAL ANTHONY JOYNER, | ) | |
| Petitioner, | ) | Civil Action No. 7:07-cv-00602 |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| DIRECTOR OF THE VIRGINIA | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| Respondent. | ) | **By: Hon. Glen E. Conrad** |
| | ) | **United States District Judge** |

Jarmal Anthony Joyner, a Virginia Department of Corrections inmate proceeding pro se, has

filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Respondent filed a motion

to dismiss, pursuant to Rule 5 of the Rules Governing Section 2254 Cases, to which Joyner filed a

timely response,[1] making the matter ripe for consideration. Upon review of the state court records

and the pleadings and exhibits submitted by the parties, the court will grant respondent's motion.

### I. Factual and Procedural Background[2]

The evidence presented at Joyner's jury trial in the Circuit Court of Botetourt County

indicates that the victim, Linda Orange, a breakfast bar hostess at the 604 Minute Market, arrived

at the Minute Market on June 9, 2003, at 3:53 AM to prepare breakfast. She unlocked the doors,

entered, and then locked the doors behind her. While in the kitchen, Orange heard a loud, pounding

sound in the back of the store. Upon investigation, Orange observed a male intruder, wearing a black

---

[1] Subsequent to his response, Joyner filed a motion for appointment of counsel, motion for leave to proceed in forma pauperis, and motion to produce documents, all of which were denied by Order entered April 10, 2008. Joyner has since filed objections to that Order. Accordingly, Joyner's objections will be noted and overruled for the reasons stated in the court's Order of April 10, 2008.

[2] This factual summary is based, in part, upon the factual summary noted in the July 6, 2005 Court of Appeals Opinion denying Joyner's petition for appeal and confirmed by the trial transcript.

sweatshirt, jeans, and "silk looking nylon" scarf covering is head and mouth. (Trial Transcript at 75, Mar. 18, 2004 (hereinafter "Trial Tr.").) Orange screamed and the intruder ran towards her carrying a sledge hammer and tire iron and pushed her. Orange begged the intruder not to hurt her, as he held her head and yelled at her not to look at him. The intruder then forced Orange into an adjacent office and ordered her to open a safe that was located in the office. Orange testified at trial that, even though most of the intruder's face was covered, she observed his eyes and nose on more than one occasion. Orange and the intruder were in the office together for five to eight minutes until Orange informed the intruder that police officers normally check on her and that, if she were not at the front window to wave, they would know that something was wrong. The intruder then left the office and Orange locked the door and attempted to call the police. The intruder returned a short time later, forced the office door open, and remained with Orange for four more minutes until she informed him that she had successfully contacted the police. The intruder then fled and Orange contacted authorities.

On June 10, 2003, Captain K.K. Parker, an investigator for the Botetourt County Sheriff's Office, arrived at Orange's residence and showed her several photo arrays of suspects. Orange did not recognize anyone in the first array, but upon review of the second array, she noted two men whose eyes resembled those of the burglar. Orange recalled that she was sleepy at the time from medication. Parker returned a week later, showed her the second array again, at which time Orange identified Joyner's photograph. Orange also identified Joyner in court. Orange avowed that she had no doubt that Joyner was the intruder from the Minute Market and that she would never forget his face.

Cathy Sowers, a clerk at the Country Store during the early morning hours of June 9, 2003,

2

recalled seeing a man acting suspiciously in the store between 2:00 and 3:00 AM. The man wore a black shirt and pants and had a scarf around his head under a baseball cap turned around backwards. Sowers contends that he was evasive, moving around the store, touching things, and going into the restroom. Sowers later identified Joyner from a photo array and identified Joyner in court. Sowers recalled that she got a good look at him and that she knew him.

James Brown, a forensic scientist specializing in trace evidence, examined glass particles recovered from a van registered to Joyner's wife and compared them to glass particles from the door of the burglarized Minute Market store. Eleven of the twenty-one glass particles from the van were consistent in refractive index with the glass from the Minute Market door. One glass particle, the only particle large enough to test and determine its physical properties, had physical properties consistent with the store's glass.

Tina Joyner, Joyner's wife, testified that Joyner lived with her at her mother's residence, and that he was at home the night the crime occurred. Tina recalled that Joyner received a phone call from a friend, Eddie Spruill, at 1:00 AM. When Tina awoke the next morning at 7:00 AM, Joyner was asleep in bed. Eddie Spruill corroborated Tina's testimony and testified that he telephoned Joyner and spoke with him at 1:00 AM. Tina also indicated that, several days after the robbery, she drove to the Minute Market in the van to investigate the allegations against her husband. In rebuttal, Captain Parker testified that he visited Tina Joyner on June 13, 2003, four days after the burglary. At that time Tina informed Parker that she and Joyner did not live together. Parker advised Tina that he was investigating a burglary on June 9, 2003, and Tina indicated that she did not know where Joyner was on that date. Parker also testified that Joyner informed him on June 18, 2003, that Joyner was living at his mother's residence.

3

At the conclusion of the trial, Joyner was ultimately convicted of attempted robbery, in violation of Va. Code Ann. § 18.2-58 and § 18.2-26, abduction, in violation of Va. Code Ann. § 18.2-48, and breaking and entering, in violation of Va. Code Ann. § 18.2-91 (Circuit Court Case No. CR03-000309, CR03-000311, and CR06-000312). The Court granted the Commonwealth's motion to nolle prosequi a related charge of wearing a mask in public, in violation of Va. Code Ann. § 18.2-422. On August 16, 2004, Joyner was sentenced to a total term of fifty-five years incarceration.

Joyner's appeal to the Court of Appeals of Virginia was refused by a single judge of that Court on December 14, 2004. That Court indicated that the case was not timely filed with the clerk of the trial court and dismissed the appeal. A petition for rehearing was granted and the case was reinstated on the docket of the Court by order entered January 21, 2005. However, the petition for appeal was ultimately denied by per curiam opinion entered July 6, 2005. The petition for appeal was again denied by a three-judge panel by order entered January 20, 2006. On July 6, 2006, the Supreme Court of Virginia refused Joyner's petition for appeal. Joyner's petition for rehearing was denied on September 20, 2006.

Joyner then filed a habeas corpus petition in the Supreme Court of Virginia on January 29, 2007. On April 5, 2007, Joyner was granted leave to file a supplemental petition for a writ of habeas corpus. On October 4, 2007, the Supreme Court of Virginia dismissed the petition. Joyner's petition for rehearing was denied by order entered January 22, 2008. On December 31, 2007, Joyner filed the instant § 2254 petition.

## II. Current Claims

Joyner appears to raise the following self-numbered and lettered claims in his lengthy and

4

repetitious § 2254 petition:

    (1) The trial court erred in admitting illegally obtained evidence in violation of the Fourth Amendment;

    (2) The trial court erred in overruling Joyner's request for a continuance;

    (3) The trial court erred in proceeding to trial while Joyner was handcuffed and shackled;

    (4) The evidence was not sufficient to support Joyner's convictions;

    (5) The trial court erred in denying Joyner the right to self-representation;

    (6) The trial court erred in overruling Joyner's objection to the Commonwealth's improper statements;

    (7) The trial court erred in failing to conduct a <u>subpoena duces tecum</u> hearing;

    (8) The trial court erred in failing to conduct a discovery hearing;

    (9) The trial court erred in denying Joyner's motion for a new trial.

    (A) Counsel labored under a conflict of interest and rendered ineffective assistance to Joyner when counsel was a court-appointed bankruptcy attorney and was, therefore, unable to conduct any meaningful adversarial challenge to the prosecution;

    (B) Counsel labored under a conflict of interest and rendered ineffective assistance to Joyner when counsel conspired with the prosecutor's office;

    (C) Counsel labored under a conflict of interest and rendered ineffective assistance to Joyner when counsel failed to take "professional responsibility" for fundamental decisions in Joyner's case;

    (D) Counsel rendered ineffective assistance to Joyner when counsel failed to adequately investigate, prepare, and subpoena critical witnesses;

5

(E) Counsel rendered ineffective assistance to Joyner when counsel failed to investigate a "voice exemplar" on taped evidence and an incorrect transcription of the tape;

(F) Counsel rendered ineffective assistance to Joyner when counsel failed to raise legitimate arguments in support of the suppression of certain evidence;

(G) Counsel rendered ineffective assistance to Joyner when counsel failed to move to suppress the "in-court and out-court" identification of Joyner;

(H) Counsel rendered ineffective assistance to Joyner when counsel failed to adequately investigate a supplemental motion for discovery concerning particles from Joyner's wife's van;

(I) Counsel rendered ineffective assistance to Joyner when counsel failed to adequately investigate a surveillance video;

(J) Counsel rendered ineffective assistance to Joyner when counsel failed to adequately investigate the time-line concerning how long it takes to place two large holes in concrete walls;

(K) Counsel rendered ineffective assistance to Joyner when counsel failed to adequately investigate a pre-trial motion concerning independent and separate offense, wrongs, or acts, and exculpatory DNA evidence;

(L) Counsel rendered ineffective assistance to Joyner when counsel failed to adequately investigate and prepare a proper subpoena duces tecum motion for exculpatory evidence;

(M) Counsel rendered ineffective assistance to Joyner when counsel failed to object to Joyner being shackled with leg irons, handcuffs, and a belly chain in full view of the jury;

(N) Counsel rendered ineffective assistance to Joyner when counsel failed to object to

6

erroneous hearsay expert testimony concerning a shoe print found at the crime scene that was unsupported by a forensic document or photograph;

(O) Counsel rendered ineffective assistance to Joyner when counsel failed to object to irrelevant and unduly prejudicial statements or remarks by the prosecutor;

(P) Counsel rendered ineffective assistance to Joyner when counsel waived Joyner's fundamental right to testify at trial;

(Q) Counsel rendered ineffective assistance to Joyner when counsel failed to make a motion concerning the sufficiency of the evidence of the abduction charge;

(R) Counsel rendered ineffective assistance to Joyner when counsel failed to request a certain jury instruction concerning abduction;

(S) Counsel rendered ineffective assistance to Joyner when counsel failed to object to the jury poll;

(T) Counsel rendered ineffective assistance to Joyner when counsel failed to move to quash the venire;

(U) Appellate counsel rendered ineffective assistance to Joyner when counsel failed to conduct an adequate investigation, present mitigating evidence, or proffer evidence that was missing from the record;

(V) Counsel rendered ineffective assistance to Joyner when counsel failed to object to the trial court's ruling that denied access to exculpatory material;

(W) Counsel rendered ineffective assistance to Joyner when counsel failed to object to the trial court's denial of Joyner's motion for a continuance;

(X) Counsel rendered ineffective assistance to Joyner when counsel failed to object to the

7

trial court's denial of Joyner's motion to proceed pro se at trial;

(Y) Counsel rendered ineffective assistance to Joyner when counsel failed to object to the trial court's denial of Joyner's motion for a new trial;

(Z) The trial court erred in denying Joyner's motion to proceed pro se at trial[3];

(AA) Counsel rendered ineffective assistance to Joyner when counsel failed to raise the issue of prosecutorial misconduct when the prosecutor violated a motion in limine agreement;

(BB) Counsel rendered ineffective assistance to Joyner when counsel failed to raise the issue of prosecutorial misconduct when the prosecutor made inflammatory closing arguments; and

(CC) Counsel rendered ineffective assistance to Joyner when counsel failed to raise the issue of prosecutorial misconduct when the prosecutor failed to disclose exculpatory evidence to Joyner.

### III. Exhaustion and Procedural Default–Claims (5) through (9)

In order to seek federal habeas review of a state court conviction, a petitioner must first exhaust available state court remedies. 28 U.S.C. § 2254(b). State courts must be "provided a full and fair opportunity to review earlier state court proceedings." Whittlesey v. Circuit Court for Baltimore County, 897 F.2d 143, 145 (4th Cir. 1990). Joyner has not fairly presented Claims (5) through (9) to any Virginia court, either on direct review or in his petition for a writ of habeas corpus. See Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997). Moreover, Joyner would now be barred by Virginia Code §§ 8.01-654(A)(2) and (B)(2) from raising these claims in state court.

---

[3] The court notes that Claim (Z) is essentially the same as Claim (5). Accordingly, the court will combine the two claims and consider only Claim (5).

8

Accordingly, these claims will be treated as simultaneously exhausted and procedurally defaulted for the purpose of federal habeas review. See Teague v. Lane, 489 U.S. 288. 297-99 (1989); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990) (If "it is clear that the state law would bar state review, exhaustion is not required, and federal review is precluded."). However, a petitioner may obtain review of a defaulted claim by establishing cause for the default and prejudice from the failure to review that claim or that he has suffered a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 749 (1991); see also Fisher v. Angelone, 163 F.3d 835, 844-45 (4th Cir. 1998). Joyner has not made either showing.[4]

---

[4] Joyner contends that claims (1) through (9) are allegations of trial error that were raised on direct appeal and, accordingly, are properly exhausted. The record reflects that Joyner filed a motion, dated January 1, 2006, in the Supreme Court of Virginia in which he requested that the Court appoint his counsel as "stand-by," permit him to proceed pro se, and permit him to add four more assignments of error which included claims (5), (7), (8), and (9). That Court denied the request to appoint "stand-by" counsel, granted the request to proceed pro se, and did not address the assignments of error but granted Joyner the opportunity to file a pro se petition for appeal. The assignments of error noted in the January 1, 2006 motion were not included in Joyner's subsequently filed pro se petition for appeal. Thus, it appears that claims (5) through (9) were not fairly presented to the Supreme Court of Virginia in Joyner's direct appeal. Joyner's state habeas petition to the Supreme Court of Virginia is as confusing and excessive as his current federal habeas petition; however, it is possible that portions of claims (5) through (9), at least to some extent, were presented in Joyner's state habeas petition even though they were not addressed in the October 4, 2007 opinion. A claim that has been fairly presented to all appropriate state courts is exhausted regardless of whether the state courts actually address the question. See Smith v. Digmon, 434 U.S. 332, 333-34 (1978). The court is not convinced that the claims were "fairly presented" to the Supreme Court of Virginia; however, out of an abundance of caution, this court will briefly address Claims (5) through (9), all of which lack merit. First, the trial court did not err in denying Joyner's request to proceed pro se because the record reflects that Joyner's behavior prior to trial was disruptive and inappropriate. Such behavior and Joyner's lack of legal knowledge would undoubtably have prejudiced him at trial. Moreover, the record reflects that the Commonwealth's cross-examination of the defense witnesses was not improper as Joyner alleges. The Commonwealth was not implying that Joyner was involved in other illegal activities during Tina Joyner's cross-examination but was merely questioning how she could remember the date that the Minute Market was burglarized so clearly by asking Tina Joyner if she knew where Joyner was on other particular dates. Thus, the trial court did not err in overruling objections to that line of questioning. The trial court also did not err in failing to conduct a subpoena duces tecum hearing concerning surveillance tapes at the Minute Market and employment records of Sowers and Orange. The record is clear that the robber removed the VCR and surveillance tape from the premises of the Minute Market on the evening of the crime and, while the VCR was recovered behind the store, the tape was never found. Moreover, Joyner fails to allege what evidence the employment records of either Sowers or Orange would have provided and how that evidence would have supported his defense. Joyner next appears to allege that the trial court erred in failing to conduct a discovery hearing to examine the surveillance videotape from the Country Store. This claim affords Joyner no relief as the tape was presented at trial and, while Joyner alleges that the individual on the videotape was not him, the jury was able to view the videotape and compare that individual to Joyner during the trial. Finally, the trial court did not err in denying Joyner's motion for a new trial as the evidence was sufficient to convict him on all charges. This court will more fully address the sufficiency of the evidence in section correlating to Claim (4).

9

## IV. Remaining Claims

Respondent admits that Joyner properly exhausted his state court remedies as to the rest of his claims. Therefore, this court may address these claims under the standards set forth in 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). Section 2254(d) as amended by the AEDPA reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Applying the interpretation of this standard of review set forth by the Supreme Court of the United States in Williams v. Taylor, 529 U.S. 362, 413 (2000), a state court adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." See also Lovitt v. True, 403 F.3d 171 (4th Cir. 2005), cert. denied, 126 S. Ct. 400 (2005); Bell v. Jarvis, 236 F.3d 149, 157 (4th Cir. 2000) (en banc).

A state court decision unreasonably applies clearly established federal law if the state court, despite correctly identifying the governing legal principle, "unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Williams Court stressed that Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect."

10

Id. at 411. Thus, under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court's decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable. Id.; Booth-El v. Nuth, 288 F.3d 571, 576 (4th Cir. 2002); see also McLee v. Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997) (holding that the focus of federal court review is the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves).

In addition, a state court determination of a factual issue is "presumed to be correct" and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003). When reviewing the sufficiency of the evidence on a federal habeas petition, "the critical inquiry . . . must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). In determining whether the Court of Appeals of Virginia reasonably applied these principles, this court must determine whether the decision is minimally consistent with the record. Bell v. Jarvis, 236 F.3d 149, 159 (4th Cir. 2000).

## Trial Court Error–Claims (1)-(4):

**Claim (1):**

In Claim (1), Joyner contends that the trial court erred in admitting illegally obtained

11

evidence in violation of the Fourth Amendment. Having reviewed the record, the court agrees with respondent that this claim is barred by the United States Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976). In Stone, the Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494. Once a district court has made the "'opportunity' inquiry," under Stone, "it need not inquire further into the merits of the petitioner's [Fourth Amendment claim], . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim . . . was in some way impaired." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978).

In the instant case, the court concludes that Joyner had a full and fair opportunity to litigate his Fourth Amendment claims. Prior to trial, Joyner's attorney filed a motion to suppress, in which he argued that investigating officers violated Joyner's Fourth Amendment rights by illegally searching his vehicle and his wife's van and removing evidence from the vehicles in the form of a black scarf and some glass particles found in the floorboard. The Circuit Court subsequently held a suppression hearing on January 29, 2004, at which the Court heard testimony from Captain Parker and Investigator Gary Sprinkle, who were both involved in the alleged seizure. Parker provided evidence that Joyner consented to the search in the form of a transcript of a taped recording made on the day of search.[5] The record reflects that Joyner had the opportunity to cross-examine Parker

---

[5] Joyner appears to contend in his response to the motion to dismiss that he was not provided with a full and fair opportunity to litigate his Fourth Amendment claim because counsel failed to review the tape itself prior to the suppression hearing and because the transcript of the tape was not made a part of the record on appeal. Joyner's complaints fail to support a finding that he was not provided with an opportunity for a full and fair litigation of his Fourth Amendment claim. Joyner fails to allege that the transcript was not accurate or that counsel failed to review the transcript

and Sprinkle. The Circuit Court denied Joyner's motion to suppress at the conclusion of the hearing. In addition to the pretrial motion, Joyner raised his Fourth Amendment claims on direct appeal. The claims were fully addressed on the merits by the Court of Appeals of Virginia. Accordingly, because the state courts afforded Joyner a full and fair opportunity to litigate his Fourth Amendment claims, Claim (1) is barred under Stone v. Powell, supra, and will, therefore, be dismissed.

**Claim (2):**

Joyner next complains that the trial court erred in overruling his request for a continuance because counsel was unprepared for trial; several witnesses providing exculpatory evidence, including a videotape expert, were not subpoenaed; the prosecution would have suffered minimal inconvenience as the prosecution's witnesses all resided locally; and the denial prejudiced Joyner.

The Court of Appeals of Virginia fully considered and denied this claim on direct appeal noting:

> The evidence does not support Joyner's allegation that the trial court abused its discretion. We first note that attorney Anderson[6] distorted the facts at the post-trial hearing as to statements that Joyner's trial attorney, Geddes, made to the trial court. Contrary to Anderson's representation, Geddes did not tell the trial court he needed more time to investigate or that he needed a continuance to obtain witnesses and testimony that would be helpful. Instead, Geddes advised the trial court he was ready to try the case, but that he and Joyner disagreed as to the importance and need for certain evidence and that he and Joyner differed as to the proper trial strategy.
>
> Moreover, we find that the presence of a video expert was not material under these circumstances. Joyner effectively cross-examined Sowers and was able to show that Sowers misidentified the clothing worn by the man depicted in the still photos she claimed was Joyner. Moreover, the jury was able to compare the

---

prior to the hearing. Moreover, the relevant portions of the transcript were read into the record and Joyner fails to provide the court with any omitted portions of the transcript that should have been considered on appeal.

[6] It appears that Christopher Anderson represented Joyner at the August 16, 2004 hearing concerning post-trial motions and sentencing.

13

surveillance camera photos with Joyner's appearance at trial and determine the accuracy of Sower's description and identification.

As to Dotson[7], Joyner's trial attorney (Geddes) advised the trial court on the day of trial that the investigator was in contact with Dotson. At the sentencing hearing, Joyner's subsequent attorney, Anderson, told the trial court that Dotson "gave an interview to Mr. Greenway."[8] Despite this contact with Dotson, the record fails to show that Joyner exercised due diligence and attempted to subpoena him at any time. [footnote omitted] Moreover, neither Joyner nor his attorneys proffered for the record the alleged "deposition" indicating about what exactly Dotson would testify. Furthermore, although attorney Anderson claimed to have subpoenaed Greenway for the post-trial hearing, he "released" Greenway, thus preventing the Commonwealth or the trial court from examining him as to Dotson's alleged tainted identification.

The evidence does not support the defendant's allegation that the trial court abused its discretion. Furthermore, the evidence does not show, nor did Joyner establish with any specificity, how he was prejudiced by the court's denial of another continuance. Accordingly, the trial court did not abuse its discretion by refusing to continue the trial.

Joyner v. Commonwealth of Virginia, Record No. 2758-04-3, at 7-8 (Va. Ct. App. July 6, 2005).

Joyner "admit[s]" that he did not establish on direct appeal how he was prejudiced by the court's denial of another continuance; however, he contends that he now "has specificity [sic] demonstrated . . . how the trial court abused [its] discretion and violated a constitutional error." (Resp. Opp'n Mot. Dismiss at 6.) While Joyner's factual support for this contention is jumbled and difficult to comprehend, it appears that he claims that Sowers initially identified another individual and Joyner was unable to effectively cross-examine Parker as to this fact. Joyner's claim has no merit as both Sowers and Parker testified at trial and Joyner was given ample opportunity to cross-examine both witnesses. Accordingly, the court finds that Joyner cannot demonstrate that the state

_____

[7] It appears that Walter Dobson, not Dotson, was a cook working with Sowers at the Country Store who, allegedly, also identified Joyner from an array when investigators approached him. Dobson's out of court identification was not presented at trial, nor was he a witness at trial.

[8] Mr. Greenway was a private investigator hired by Joyner's family.

14

court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (2) also will be dismissed.

**Claim (3):**

Joyner next claims that the trial court erred in proceeding to trial while Joyner was handcuffed and shackled. Joyner claims that he was denied a "fair trial" because the jury was "predisposed to convict [him] as a result of" the handcuffs and shackles. (Pet at 18-19.)

The Court of Appeals of Virginia fully considered and denied this claim on direct appeal noting:

> The trial transcript reflects that, after the trial court denied the continuance motion, Joyner became obstreperous, causing the trial judge to order him removed from the courtroom. After Joyner was removed, the trial court ordered a brief recess and directed counsel to meet with him in chambers. That conference was not transcribed into the record. After recess, the trial court explained:
>
>> The record will show the defendant is present with counsel. The record will show these proceedings were disrupted temporarily due to the disruptive behavior of the defendant and he was removed by the bailiffs. The record, I am sure, is made on his recalcitrant behavior before the Court before he was removed and that it apparently took five or six deputies to restrain him and remove him from the courtroom.
>
> The trial court then admonished Joyner to behave and warned him, "[y]ou may forfeit your right to be present at the trial by your recalcitrant, disrespectful, disruptive behavior. I don't want that to happen, I want you to be here and help your attorney with your defense." A short time later, the trial court took a brief recess so Joyner could change his clothes, after which the trial court again admonished Joyner not to misbehave lest he be removed from the courtroom and tried *in absentia*.
>
> A review of the trial transcript demonstrates that Joyner did not voice any objections to being restrained, and in fact, it fails to show that Joyner was indeed restrained in any way. Because the Commonwealth's attorney conceded at the post-trial hearing that Joyner "was handcuffed and his legs were shackled," we assume he was. However, Joyner's objection thereto comes too late.

15

An error is sufficiently preserved for consideration on appeal if a party "at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take *or* his objections to the action of the court and his grounds therefor." Additionally, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." This rule serves to "avoid unnecessary appeals, reversals and mistrials by allowing the trial judge to intelligently consider an issue and, if necessary, take corrective action."

Parker v. Commonwealth, 14 Va. App. 592, 595-596, 421 S.E.2d 450, 452-53 (1992) (citing, *inter alia*, Code § 8.01-384 and Rule 5A:18). "The purpose of Rule 5A:18 is to allow the trial court to correct in the trial court any error that is called to its attention." Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (*en banc*).

Because Joyner did not object at trial, his objections and mistrial motion are not timely, and Rule 5A:18 bars our consideration of this issue on appeal.

"Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions." Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*). Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

Joyner v. Commonwealth of Virginia, Record No. 2758-04-3, at 7-8 (Va. Ct. App. July 6, 2005).

A habeas claim is defaulted where a state court has dismissed it under an adequate and independent state rule and therefore declined to reach the merits of the claim. Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006). The Court of Appeals of Virginia found this claim to be procedurally defaulted under Virginia Supreme Court Rule 5A:18. This rule has been found to be an adequate and independent state law basis for default. See Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000) (recognizing Virginia's prohibition of claims not presented at trial as adequate and independent).

A federal court can only review a claim that was procedurally defaulted in the state court if

16

the petitioner demonstrates cause and prejudice for the default or a fundamental miscarriage of justice. Hedrick, 443 F.3d at 359. To establish cause for the procedural default, a petitioner must demonstrate that some "objective factor" external to his defense impeded him from complying with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, "a petitioner must offer 'new reliable evidence . . . that was not presented at trial,' " and " 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Applying these principles, the court concludes that Joyner has failed to establish cause and prejudice or actual innocence to excuse his procedural default. First, Joyner has failed to proffer any evidence to establish that any objective factor, external to his own defense, prevented him from objecting at the appropriate time before the trial court. Likewise, Joyner has failed to proffer sufficient evidence to establish an actual innocence claim under Schlup.[9] Consequently, Claim (3) may not be considered in the instant petition and must be dismissed.

**Claim (4):**

Joyner next claims that the evidence presented at trial was insufficient to support his convictions. Having reviewed the record, the court agrees with respondent that there is sufficient

---

[9] Joyner does complain that "there was no determination on the record why shackling was necessary"; however, the record clearly indicates to the contrary. (Resp. Opp'n Mot. Dismiss at 7.) The trial court made a finding on the record that Joyner was restrained because of his "disrespectful" and "disruptive behavior." (Trial Transcript at 23-24.) Indeed, "five or six deputies" were required to restrain and remove Joyner from the courtroom. (Trial Transcript at 23.) Accordingly, any claim of error on the part of the trial court has no basis and is insufficient to establish cause and prejudice or actual innocence to excuse his procedural default.

Case 7:07-cv-00602-GEC-mfu   Document 38   Filed 06/16/08   Page 17 of 50   Pageid#: 730

evidence to prove Joyner's guilt beyond a reasonable doubt. The Court of Appeals of Virginia's review of the evidence adduced at Joyner' trial established that:

> [Linda] Orange identified Joyner in court and out of court as the man who burglarized the Minute Mart and ordered her to open the safe. Sowers identified Joyner as being in the Country Store shortly before the burglary. Glass particles consistent with the glass at the Minute Mart were found in a white van belonging to Joyner's wife. The fact finder believed the Commonwealth's evidence and rejected the testimony from Joyner's witnesses that he was home at the time. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455, S.E.2d 730, 732 (1995). The Commonwealth's evidence was competent, was not inherently incredible and was sufficient to prove beyond a reasonable doubt that appellant was guilty.

Joyner v. Commonwealth of Virginia, Record No. 2758-04-3, at 15 (Va. Ct. App. July 6, 2005).

Based upon the record evidence, this court finds that a rational trier of fact could have found proof of guilt beyond a reasonable doubt. The Court of Appeals of Virginia found that the Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Joyner was guilty of attempted robbery, abduction, and breaking and entering. The court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. That Court reasonably applied the proper standard of review, and its ruling, which is consistent with the evidence contained in the record, is entitled to deference under § 2254.[10] Accordingly, Claim (4) will be dismissed.

---

[10] Joyner complains that the Supreme Court of Virginia provided no memorandum opinion analyzing his claims and that, accordingly, he did not receive a full and fair opportunity to present this constitutional claim to the highest court of the Commonwealth. The reasoning of the Court of Appeals of Virginia is imputed to the Supreme Court of Virginia, even though the Supreme Court of Virginia refused the petition for appeal without explanation. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Accordingly, Joyner's complaint lacks merit.

## Ineffective Assistance of Counsel–Claims (A)-(CC):

Joyner also raises several allegations of ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a habeas corpus petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, a petitioner must show "that counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, a petitioner must show "that the deficient performance prejudiced the defense" to the extent that he was deprived of a fair trial. Id. The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Strickland establishes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

## Claim (A):

Joyner first claims that counsel labored under a conflict of interest and rendered ineffective assistance because counsel was a court-appointed bankruptcy attorney and was, therefore, unable to conduct any meaningful adversarial challenge to the prosecution. He further alleges that when retained counsel was granted the opportunity to withdraw and the original trial judge died, "this created a conflict of interest and breakdown in the adversarial system" because his newly appointed counsel did not have adequate time to prepare for trial. (Pet. at 33.)

The Supreme Court of Virginia fully considered and denied this claim noting:

The Court holds that claim (1) (A)[11] satisfies neither the "performance" nor

---

[11] The court notes that Joyner labels his current federal habeas petition differently than his state habeas petition.

the "prejudice" prong of the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The record, including the affidavit of trial counsel, demonstrates that counsel, who devoted fifty percent of his practice to criminal defense, was appointed to represent Joyner in early January 2004 and the trial occurred in March 2004. The affidavit of trial counsel and the criminal trial record, further demonstrates that an order for discovery was entered, an alibi defense was established, and the fact that the judge died prior to trial had no bearing on counsel's preparedness. Moreover, petitioner fails to articulate what additional actions counsel should have taken to prepare for trial, what additional information counsel would have learned, or how counsel's lack of preparation was prejudicial. Petitioner has failed to establish an actual conflict of interest or an adverse effect on counsel's performance. <u>See</u> <u>Mickens v. Taylor</u>, 535 U.S. 162, 172 (2002). Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 3 (Va. Oct. 4, 2007).

This court agrees that Joyner has failed to establish an actual conflict of interest or an adverse effect on counsel's performance. Simply because appointed counsel practiced bankruptcy law in addition to criminal law does not in and of itself support a finding that counsel's performance was inadequate or that he labored under a conflict of interest.[12] Moreover, Joyner fails to adequately demonstrate that the withdrawal of his retained counsel and the death of the original trial judge prejudiced him in any way. The record reflects that Joyner's trial was continued on numerous occasions and that counsel indicated that he was prepared to proceed on the morning of trial. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application

---

[12] Joyner does allege in his response to the motion to dismiss that counsel failed to subpoena several witnesses; however, Joyner fails to provide the court with any explanation as to the testimony these witnesses would have given, or how that testimony would have affected his trial. Joyner further complains that counsel failed to object to false testimony provided by Captain Parker concerning the videotape evidence and failed to pursue the alternative theory of a possible misidentification of Joyner. The record reflects that counsel adequately cross-examined Parker and presented a misidentification theory to the jury throughout the trial. Therefore, these complaints do not support a finding that counsel's performance was inadequate or that he labored under a conflict of interest.

20

of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (A) will be dismissed.

**Claim (B):**

Joyner next claims that counsel labored under a conflict of interest and rendered ineffective assistance to Joyner when counsel conspired with the prosecutor's office. Joyner contends in his response to the motion to dismiss that the court "hand[-]pick[ed] Scott Geddes," subsequent to retained counsel's withdrawal and that Geddes was "acting friend to a Court," and was manipulated by the prosecution. (Resp. Opp'n Mot. Dismiss at 11.) Joyner specifically alleges that the prosecution "informed the victim[,] Ms. Orange[,] to identify petitioner, while pressuring several other witnesses to identify petitioner and not cooperate with petitioner['s] investigation." (Resp. Opp'n Mot. Dismiss at 11.) Joyner contends that several sworn affidavits by James Greenway, a private investigator hired by Joyner's family prior to the jury trial, support his allegations and that counsel was ineffective in failing to subpoena Greenway and have him testify as to the alleged prosecutorial misconduct. Joyner ultimately alleges that this conspiracy resulted in counsel's failure to investigate exculpatory evidence and to pursue a plausible defense strategy.

The Supreme Court of Virginia fully considered and denied this claim noting:

> In claim (1) (B), petitioner alleges that he was denied the effective assistance of counsel because counsel did not pursue a plausible defense strategy or tactic. In support of his claim, petitioner contends that counsel established an alibi defense that lacked evidentiary support and that counsel should have pursued a "misidentification" defense but failed to do so. Petitioner claims that Tina Joyner gave counsel a videotape she obtained from petitioner's prior counsel, and an affidavit from a private investigator exposing an allegedly tainted police investigation and police misconduct. Petitioner further contends that counsel's strategy was "objectively unreasonable" because petitioner did not fit the assailant's description and counsel produced only one witness to discredit the prosecution's case.

21

Petitioner contends that counsel's actions were guided by counsel's association with the prosecutor's office and counsel's hesitation to alienate the prosecutors or the court. Petitioner alleges that this caused counsel to fail to pursue the misconduct and the misidentification defense. Petitioner alleges that the totality of these facts "reveal[s] counsel labor[ed] under a conflict of interest, from exposing the prosecution misconduct, that created a breakdown between petitioner and counsel."

The Court holds that claim (1) (B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, and the affidavit of trial counsel and the Court of Appeals order, demonstrates that petitioner insisted that counsel present his wife and a friend, Eddie Spruill, to testify as to petitioner's alibi at the time of the incident. The transcript further demonstrates that counsel pursued a misidentification theory and conducted adequate cross-examination in an attempt to discredit the Commonwealth's witnesses who identified petitioner as the assailant. Petitioner has not "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Darden v. Wainwright</u>, 477 U.S. 168, 186 (1986). Petitioner has failed to establish an actual conflict of interest or an adverse effect on counsel's performance. <u>See</u> <u>Mickens</u>, 535 U.S. at 172. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 3-4 (Va. Oct. 4, 2007).

This court will accord Joyner's current, unsupported conspiracy theories concerning counsel's allegiances and the prosecution's misconduct little weight. Moreover, Joyner's specific allegations concerning counsel's failure to pursue a misidentification defense and to present Greenway as a witness affords him no relief in this court. First, the state court examined Joyner's many allegations related to counsel's failure to pursue a misidentification defense, determined that Joyner's counsel made that decision for strategic reasons, and found that such a decision did not violate the performance or prejudice prong of <u>Strickland</u>. On <u>habeas</u> review, a federal court generally credits "plausible strategic judgments in the trial of a state case," and Joyner's arguments to the contrary are unconvincing. <u>Bunch v. Thompson</u>, 949 F.2d 1354, 1364 (4th Cir. 1991).

22

Finally, the "decision whether to call a defense witness is a strategic decision" demanding the assessment and balancing of perceived benefits against perceived risks, and one to which "[this court] must afford . . . enormous deference." United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994) (internal quotation marks omitted))). Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (B) will be dismissed.

**Claim (C):**

Joyner next claims that counsel labored under a conflict of interest and rendered ineffective assistance when counsel failed to take "professional responsibility" for fundamental decisions in Joyner's case. (Pet. at 5.) It appears that Joyner is ultimately complaining about several disagreements between himself and counsel concerning defense strategies. Joyner contends that he expected trial counsel to suppress the Commonwealth's evidence, including the evidence recovered from the Joyners' vehicles and Sowers' identification of Joyner, conduct an independent investigation concerning the glass found in Tina Joyner's van and a potential perpetrator of the offenses, Rakim Shabazz, and obtain psychological evaluations and medical records of Linda Orange.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The court holds that claim (1) (C) satisfied neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of trial counsel and the trial transcript, demonstrates that counsel presented the misidentification defense which petitioner now contends he

23

wanted. Counsel also pursued an alibi defense as petitioner had requested at trial, despite counsel's urgings that such a defense was unlikely to succeed. The record also demonstrates that counsel employed two private investigators to interview potential witnesses, and counsel fully investigated the facts of the case. Petitioner has failed to articulate specifically which of petitioner's wishes counsel failed to pursue. Nor does petitioner articulate the nature of any particular defense he contends counsel failed to present. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Joyner v. Director of the Department of Corrections, Record No. 070220, at 5 (Va. Oct. 4, 2007).

This court agrees that Joyner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. As the Supreme Court of Virginia noted, counsel pursued both an alibi and misidentification defense and adequately cross-examined every witness that claimed to have identified Joyner. Moreover, counsel did attempt to have the evidence recovered from the Joyners' vehicles suppressed, but was unsuccessful. Furthermore, Joyner fails to indicate what an "independent investigation of the glass" would entail. The prosecution's expert witness clearly testified as to the qualities of the glass, and Tina Joyner provided an alternative explanation for the glass particles found in her van when she testified that she drove to the Minute Market subsequent to the date of the crime but prior to the collection of the glass from her floorboard. Finally, Joyner fails to adequately demonstrate that the presentation of Linda Orange's psychological evaluations or medical records would have changed the result of the proceeding. It was clear from her testimony that she was very traumatized by the incident and required medication from a physician. The jury presumably considered those factors when determining her credibility. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application

24

of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (C) will be dismissed.

**Claim (D):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to adequately investigate, prepare, and subpoena critical witnesses. Joyner contends that he provided counsel with the names of these witnesses and the substance of their testimony. Joyner specifically alleges that counsel failed to adequately cross-examine Parker, failed to call private investigator Greenway as a witness, failed to depose, investigate, and adequately cross-examine Sowers, failed to subpoena Dobson, failed to subpoena Dianne Payne and Sandra Parrish, who "live in the area," failed to interview Penny Prillaman concerning the Country Store videotapes, failed to interview Trooper Everheart concerning Sowers' identification of Joyner, failed to interview Officer Kevin Hicks concerning Orange's identification of Joyner, failed to seek exculpatory evidence concerning Rakim Shabazz, and failed to interview Christy Banks concerning Rakim Shabazz.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2) (A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the affidavit of trial counsel, demonstrates that counsel investigated and attempted to interview all of the potential witnesses. Although the Commonwealth's witnesses refused to speak to counsel or the investigators, the Commonwealth allowed counsel to review the Commonwealth's file in its entirety. In addition, the affidavit of Attorney Christopher Anderson, who was retained to represent petitioner at sentencing and on appeal, demonstrates that he contacted each person listed above and many of those persons were unwilling or unable to testify. The filing of legal motions, interviewing witnesses, calling and questioning witnesses, lodging objections during trial, and post-trial motions are matters which fall into the category of trial strategy, an area generally left to the discretion of counsel. Strickland, 466 U.S. at 689-90. Moreover, petitioner fails to proffer the testimony of any of the listed witnesses, or explain how their testimony

25

would have affected the outcome of the trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Joyner v. Director of the Department of Corrections, Record No. 070220, at 5 (Va. Oct. 4, 2007).

As the state court examined Joyner's many allegations related to counsel's failure to adequately investigate, prepare, and subpoena critical witnesses and determined that counsel's decisions were strategic, this court will credit that determination. See Bunch, 949 F.2d at 1364. Moreover, Joyner fails to address the fact that all of the proposed witnesses were contacted with little result. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (D) will be dismissed.

**Claim (E):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to investigate a "voice exemplar" on taped evidence and an incorrect transcription of the tape. (Pet. at 5.) Joyner complains that no warrant was issued to obtain the audio recording, the officers lacked jurisdiction to obtain the recording, he never gave permission to have his voice recorded, and counsel failed to provide the transcript to Joyner so that he could review it for accuracy.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2) (B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the transcript of the pretrial motion hearing conducted on January 29, 2004, demonstrates that the validity of the recording was established when the recording

26

was used to prove the vehicle searches had been consensual. Two officers investigating the crime testified that they spoke with petitioner at his family member's home in Rice, Virginia. The officers explained that they recorded their conversation with petitioner because one of the witnesses had stated that she would never forget the assailant's voice. During the conversation, officers obtained petitioner's consent to search two vehicles on the property. The recording was transcribed and presented at the hearing to establish that petitioner had given the officers consent to search the premises, but was not presented at trial. It was not unlawful for the officers, as parties to the conversation, to record it. See code § 19.2-62(B)(2). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Joyner v. Director of the Department of Corrections, Record No. 070220, at 7-8 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Joyner does not contend that his voice was not the voice recorded on the tape nor does he provide any examples of transcript inaccuracies. Moreover, as noted by the Supreme Court of Virginia, it was not unlawful for the officers to record their conversation despite Joyner's lack of permission. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (E) will be dismissed.

**Claim (F):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to raise legitimate arguments in support of the suppression of certain evidence. Joyner alleges that his wife, mother, and mother-in-law would have testified that no consent was given for the search of the Joyners' vehicles. Joyner further complains that the tape that recorded his verbal consent was never

27

played at the suppression hearing.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2) (C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the pre-trial motions hearing transcript, demonstrates that counsel did not concede that petitioner consented to the search, but instead moved to suppress the evidence recovered pursuant to the search. At the hearing, the trial court heard testimony and a tape recording that proved petitioner consented to the search. Petitioner fails to articulate what additional arguments counsel should have made. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 7-8 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. A suppression hearing was held on January 29, 2004, in which the court considered evidence from the two officers who searched the Joyners' vehicles and recorded the conversation with Joyner, and also the transcript of that taped recording. Joyner was given the opportunity to cross-examine both officers. At the conclusion of the hearing, the court determined that the tape was not made for the purpose of ascertaining consent but was made for the purpose of voice identification to present to the victim of the offense. Accordingly, based on all of the presented evidence, the court determined that Joyner's consent to search the vehicles was given freely and voluntarily and this determination is entitled to deference. Joyner fails to provide the substance of the testimony of his proposed witnesses and merely states that their conclusions would have been that no consent was given. Joyner further fails to address the fact that such testimony would contradict his clear statements of consent recorded on tape and transcribed and presented to

28

the trial court. Finally, Joyner complains that the tape was not played at the hearing. However, a transcript of the tape was provided and, as noted earlier, Joyner fails to provide the court with any inaccuracies between the tape and the transcript. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (F) will be dismissed.

**Claim (G):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to move to suppress the "in-court and out-court" identification of Joyner. (Pet. at 6.) Joyner contends that Private Investigators James Greenway and Jason Booth provided affidavits to counsel establishing that police employed an unduly suggestive procedure to identify Joyner. Joyner further contends that the identifications made by Linda Orange and Kathy Sowers were improper and that Walter Dobson, Ms. Sowers' co-worker, would have testified that Joyner was not the man he saw in the store.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2) (D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript and the affidavit of trial counsel, demonstrates that the out of court identification procedures were not unduly suggestive and that no valid grounds existed upon which to move to suppress the identification of petitioner. Counsel cross-examined the witness that identified petitioner as the assailant and attempted to undermine her identification of him. Finally, petitioner fails to proffer evidence to establish that Walter Dobson, one of the workers at a nearby convenience store, would have testified as petitioner describes. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

29

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 7-8 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. The record is devoid of any evidence that the investigating officers were "unduly suggestive" when showing Orange or Sowers photo arrays of possible suspects. Both women, at separate times and locations, picked Joyner out of the array and then identified him again in court. Indeed, Orange stated that she "ha[d] no doubt" and his face was "imbedded in [her] mind" and Sowers stated that she "kn[ew] him" and that she was "positive" that Joyner was in the Country Store the evening of the crime. (Trial Tr. at 102-03, 131.) Moreover, Joyner suggests that the videotaped evidence from the Country Store proves that Sowers was mistaken in their identification; however, counsel cross-examined Sowers extensively concerning the videotape and noted the discrepancies between the video and her testimony to the jury. Indeed, counsel played several relevant portions of the tape to the jury and distributed still photographs from the tape. Finally, Joyner fails to adequately demonstrate that Walter Dobson would have testified that Joyner was not the man he observed in the Country Store or that such testimony would have affected the result of the proceeding. Orange and Sowers were clearly credible witnesses, both maintained that they were certain of their identification, they were adequately cross-examined, and the jury obviously credited their testimony. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (G) will be dismissed.

30

**Claim (H):**

Joyner next contends that counsel rendered ineffective assistance when counsel failed to adequately investigate a supplemental motion for discovery concerning particles from Tina Joyner's van. Joyner contends that the front windshield of the van had been severely damaged and appears to suggest that the glass particles found in the floor board of the van could have come from that damaged windshield or from Tina Joyner's trip to the Minute Market. Joyner further appears to allege that counsel failed to discover that the glass particles did not contain any concrete ash or fiberglass from the crime scene, that the chain of custody of the evidence recovered from the van was not properly demonstrated at trial, and that counsel failed to note that the van had been searched previously.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2) (E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the affidavit of trial counsel, demonstrates that counsel reviewed the results prepared by the State Forensic Lab and cross-examined the forensic expert to demonstrate that the analysis proved that the type of glass found in petitioner's van was common and could have come from any source, including a broken windshield. Petitioner does not articulate what other information counsel should have elicited. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Joyner v. Director of the Department of Corrections, Record No. 070220, at 10-11 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the

31

proceeding would have been different. James Anthony Brown, a forensic scientist, testified that he analyzed and compared the glass found in the floorboard of the van to glass from the broken front door of the Minute Market and determined that eleven of the twenty-one glass particles collected from the van were consistent in refractive index with glass from the door. One of the glass particles was determined to be consistent in physical properties, in this case, thickness, with the glass from the door. Brown further noted that the glass from the van was not consistent with environmental debris that, for example, could have been picked up on an individual's shoe while walking and transferred to the floorboard. Finally, Brown noted that the glass found in the van floorboard could have originated from another source other than the broken door. Defense counsel adequately cross-examined Brown, and Brown admitted that the glass was consistent with commercial glass used in car windows, that he could not identify the exact source of the glass, and that he found no glass particles or insulation on the black scarf recovered from Joyner's car. Counsel later noted in his closing arguments that the glass could have come from other sources and reminded the jury that no particles from the crime scene were found on the black scarf recovered from Joyner's car.[13] Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (H) will be dismissed.

---

[13] Joyner also contends, it appears for the first time, that the van was searched on June 9, 2003, the day after the crime, and that no glass particles were recovered at that time. The record does not support this contention, however. While it appears that officers did visit the home of Joyner's mother-in-law on June 9, 2003, neither Tina Joyner nor her mother indicated during their trial testimony that the van was searched on that occasion. Joyner further complains about the chain of custody of the glass particles; however, Parker, one of the officers who collected the debris from the van floorboard, clearly testified that he submitted that debris to the lab. Joyner provides no evidence to the contrary. Accordingly, Joyner's unsupported claims are insufficient to provide any relief in this court.

**Claim (I):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to adequately investigate a surveillance video from the Country Store. Joyner specifically complains that counsel failed to adequately cross-examine Parker concerning the surveillance video and failed to have the video reviewed by "a video expert." (Pet. at 97.)

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2)(F) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, demonstrates that counsel had reviewed the videotape and had cross-examined Ms. Sowers to demonstrate that Ms. Sowers had misidentified the clothing worn by the man depicted in the videotape. In addition, the jury was shown the photos taken from the videotape and was able to compare them to petitioner's appearance in court. Petitioner fails to assert what additional actions he contends counsel should have taken. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 10-11 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. The record reflects that counsel sufficiently reviewed the videotape and played portions of the videotape for the jury. He also adequately cross-examined Sowers as to her identification of Joyner and noted her confusion as to the clothing worn by Joyner in the store. Moreover, photographs taken from the videotape were provided to the jury. Furthermore, the court notes that counsel did cross-examine Parker concerning the videotape and

33

a possible misidentification, thus, any further cross-examination of Parker concerning that issue would have been repetitive. Finally, Joyner's claim that counsel should have had the videotape reviewed by a video expert also fails as there is no indication that the videotape had been tampered with or that the jury was unable to accurately compare the videotape and the pictures taken from the videotape with Joyner's appearance in court. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (I) will be dismissed.

**Claim (J):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to adequately investigate the time-line concerning how long it takes to place two large holes in concrete walls. Joyner contends that the suspect was placed in the area less than thirty minutes prior to the crime at the Minute Market. Joyner contends that Amos Demolition was willing to testify that it was impossible to make two three-foot-by-four-foot holes in cinder block walls in thirty minutes.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2) (G) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the affidavit of trial counsel, demonstrates that counsel spoke with the demolition expert and determined that the expert's testimony would not be useful at trial. Moreover, petitioner fails to proffer an affidavit from the demolition expert to establish that the expert would have testified as petitioner describes. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 12 (Va. Oct. 4, 2007).

34

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Joyner does not contest that counsel contacted the demolition experts and determined that their testimony would not be useful at trial. As previously noted, the "decision whether to call a defense witness is a strategic decision" demanding the assessment and balancing of perceived benefits against perceived risks, and one to which "[this court] must afford . . . enormous deference." Terry, 366 F.3d at 317. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (J) will be dismissed.

**Claim (K):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to adequately investigate a pre-trial motion concerning independent and separate offenses, wrongs, or acts, and exculpatory DNA evidence. Specifically, Joyner contends that the prosecution possessed Joyner's DNA from another crime scene and that this DNA could have bolstered a mistaken identity defense.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2) (H) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and affidavit of trial counsel, demonstrates that petitioner's DNA was not an issue at trial. Moreover, petitioner fails to describe what this additional evidence would have proven. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

35

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 12-13 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Simply because Joyner's DNA was not recovered at the Minute Market does not prove that he was not the perpetrator of the crime. Moreover, eliciting information at trial concerning Joyner's DNA found at another crime scene would open the door to at least that portion of Joyner's criminal record. Drawing the jury's attention to any portion of Joyner's criminal history would not have been sound trial strategy. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (K) will be dismissed.

**Claim (L):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to adequately investigate and prepare a proper <u>subpoena duces tecum</u> motion for exculpatory evidence. Joyner appears to claim that information concerning Linda Orange's alleged inconsistent statements, potential mental illness, and involvement in "sex, drugs, and other thing[s]," was not provided. (Pet. at 101.) He further alleges that any information concerning investigations involving Rakim Shabazz, videotape evidence of Joyner's conversation with Dobson and Sowers prior to trial in which they allegedly apologized to Joyner for their mistaken identification, employment records for all black males who worked at Dynex, a location near the Minute Market, and a statement by Paul Faris,

36

Sowers' cousin, would have "expos[ed] . . . the tainted investigation." (Pet. at 100.)

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (2) (I) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Petitioner fails to articulate the names of people petitioner should have subpoenaed, and he fails to proffer the nature of the exculpatory evidence they allegedly would have provided. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 13 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Joyner does provide this court with potentially exculpatory evidence; however, he fails to adequately demonstrate that such evidence would have changed the outcome of his trial. First, Joyner fails to provide the substance of any of Linda Orange's allegedly inconsistent statements and his allegations concerning her mental health and substance abuse problems are speculative at best. Moreover, he fails to allege what information the investigations of Rakim Shabazz would have provided. Furthermore, a soundless video recording of Joyner's alleged meeting with Dobson and Sowers would not have proven that they misidentified him. Sowers clearly testified at trial that she knew Joyner and saw him in her store the evening of the crime. The record reveals that Sowers knew Joyner through his association with her cousin, Paul Faris. Indeed, Sowers indicated that Joyner and Faris were associated because they were involved in a drug conspiracy. Accordingly, subsequent to a motion submitted by defense counsel prior to trial, the trial court decided to permit Sowers to testify that she knew Joyner, but prohibited her from

37

noting exactly how she knew Joyner. Thus, testimony from Faris presented by the defense could have opened the door to that information and negatively affected Joyner's credibility. Finally, gaining any relevant information from the employment records of all black male employees at Dynex is, again, speculative at best. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (L) will be dismissed.

**Claim (M):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to object to Joyner being shackled with leg irons, handcuffs, and a belly chain in full view of the jury. Joyner contends that counsel's failure "weaken[ed] Joyner's defense" and "adversely" affected "the jury's perception of [Joyner's] character." (Pet. at 103-04.)

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (3) (A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, the order of the Court of Appeals, and the affidavit of trial counsel, demonstrates that petitioner became unruly after the court denied his motion to continue the trial and had to be physically restrained by the bailiffs. The affidavit of trial counsel demonstrates that due to petitioner's disruptiveness, he was handcuffed and placed in shackles but counsel avers that petitioner was dressed in street clothes, his hands were under the table and there is no evidence that the jury knew petitioner was bound or that it affected the jury's judgment. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 12-13 (Va. Oct. 4, 2007).

38

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. The record clearly reflects that Joyner became disruptive and had to be restrained subsequent to the court's denial of his motion to continue and Joyner does not dispute this fact. Thus, it appears that the handcuffs and shackles were warranted and Joyner provides no evidence to the contrary. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (M) will be dismissed.

**Claim (N):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to object to "erroneous" expert testimony concerning a shoe print found at the crime scene that was unsupported by a forensic document or photograph. (Pet. at 7.) Specifically, Joyner appears to complain that counsel failed to execute a certificate of analysis to verify the validity of the evidence and that the chain of custody of this evidence was not adequately established. Joyner suggests that the shoe print could have originated from one of the responding officers rather than the perpetrator of the crime.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (3) (B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, demonstrates that the forensic expert examined the cast of the footprint found at the scene. The cast had broken before it was examined but the expert was able to determine that it was a boot and on cross-examination admitted he could not tell for sure the name of the manufacturer. Petitioner proffered

39

no evidence to support his speculation that the print may have belonged to Hix. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Joyner v. Director of the Department of Corrections, Record No. 070220, at 14-15 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Joyner provides no factual support for his allegation that the testimony by Andrew P. Johnson, a forensic scientist from the Western Regional Laboratory, was "erroneous" or incorrect. Moreover, counsel adequately cross-examined Johnson. Johnson admitted that he could not identify the manufacturer of the shoe that made the prints and he further admitted that seventy-five percent of the male population would have a shoe size in the range of that print. Furthermore, Joyner's suggestion that the chain of custody of that evidence was not adequately established is clearly belied by the record. Parker testified that when he was processing the crime scene, he "found a shoe impression on the door" of the office, on a "piece of wood that was located there in the office area," and in the dirt behind the store. (Trial Tr. at 164.) Parker testified that the impressions in the store "looked just like the one that was at the back of the store," thus, a cast impression was made of the print in the back of the store. (Trial Tr. at 208.) Parker testified that he submitted this cast to the lab "to maybe get an idea of the shoe size" of the perpetrator. (Trial Tr. at 172.) Johnson testified that the laboratory received the cast of the shoe print from Parker and Johnson subsequently analyzed the print. Joyner provides no evidence to suggest that the cast analyzed by Johnson and submitted as evidence at the jury trial was not the cast taken from the crime

40

scene. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (N) will be dismissed.

**Claim (O):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to object to irrelevant and unduly prejudicial statements or remarks by the prosecutor. Joyner contends that counsel's statements deprived him of a fair trial because they attempted to elicit testimony concerning other crimes by Joyner.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (3) (C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Petitioner fails to articulate with specificity the remarks that the prosecutor made that petitioner contends were irrelevant and unduly prejudicial. The record, including the trial transcript, demonstrates that counsel objected during cross-examination of Joyner and Spriull [sic] and his objections were overruled. The record further demonstrates that cross-examination did not exceed the scope of direct examination and that the Commonwealth properly elicited impeachment evidence. The affidavit of trial counsel demonstrates that petitioner insisted that Tina Joyner and Eddie Spriull [sic] be called to testify despite counsel's advice that the witnesses lacked credibility and that their testimony could prove to be damaging to petitioner's case. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 15-16 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the

41

proceeding would have been different. Joyner refers the court to various transcript pages but fails to specify what questions or statements on each page were prejudicial. Moreover, a review of the transcript of the cross-examination of both witnesses reveals no inappropriate questions or statements on the part of the Commonwealth. The Commonwealth properly noted several discrepancies in Tina Joyner's original statements to the investigating officers and her trial testimony and noted her financial interest in preventing Joyner's incarceration. The Commonwealth also properly questioned Eddie Spruill as to a felony conviction that he had obtained in 1998. Furthermore, counsel did object to several of the Commonwealth's inquiries during the course of both cross-examinations. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (O) will be dismissed.

**Claim (P):**

Joyner next alleges that counsel rendered ineffective assistance because counsel waived Joyner's right to testify at trial. Joyner complains that counsel informed the court that Joyner was being uncooperative and contends that he had a fundamental right to testify at trial that could not be waived by counsel or the court.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (3) (D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript and the affidavit of counsel, demonstrates that counsel did not waive petitioner's right to testify nor did counsel question petitioner's competence to testify. Trial counsel advised petitioner that it was a "very bad idea" for petitioner to testify. Petitioner does not articulate the substances of the testimony

42

he would have provided. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Joyner v. Director of the Department of Corrections, Record No. 070220, at 16 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Joyner does not allege that he requested that he be allowed to testify nor does he allege that he was prohibited from testifying by counsel or the court. Simply because counsel advised Joyner not to testify does not support a finding that counsel "waived" Joyner's right to testify on his own behalf. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (P) will be dismissed.

**Claims (Q) and (R):**[14]

Joyner next alleges that counsel rendered ineffective assistance when counsel failed to make a motion concerning the sufficiency of the evidence of the abduction charge and failed to request a "lesser included offense" jury instruction concerning the abduction charge. (Resp. Opp'n Mot. Dismiss at 50.) Joyner argues that the evidence was insufficient because of "inconsistent testimony" and because the Commonwealth failed to prove that Joyner had the requisite intent to commit abduction. (Pet. at 110.) Joyner also appears to argue that counsel should have argued a double

---

[14] The Supreme Court of Virginia analyzed Claims (Q) and (R) together, Claims (S) and (T) together, Claims (V), (W), (X), and (Y) together, and Claims (AA), (BB), and (CC) together; therefore, for efficiency, this court will analyze those claims in that manner as well.

43

jeopardy defense because "his conviction for abduction was based on the restraint inherent in the underlying attempted robbery." (Resp. Opp'n Mot. Dismiss at 50.)

The Supreme Court of Virginia fully considered and denied these claims noting:

> The Court holds that claim (3) (E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, demonstrates that counsel moved to strike the evidence with regard to the abduction charge. The evidence proved that petitioner detained the victim in her office while he tried to open the safe. The detention was unnecessary to accomplish the robbery and therefore there was no valid basis upon which counsel could have sought this instruction petitioner desired. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 17 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. The record demonstrates that, at the conclusion of the evidence, counsel renewed his motion to strike with respect to the abduction charge noting the very same arguments that Joyner currently raises. Joyner concedes in his response that counsel moved to strike but contends that counsel's "attempt was insufficient." (Resp. Opp'n Mot. Dismiss as 50.) Joyner provides the court with no support as to why counsel's attempt was insufficient nor does Joyner suggest any actions that counsel should have taken. Moreover, this court agrees that the evidence demonstrates that the detention of Linda Orange was unnecessary to accomplish the robbery. Thus, there was no valid basis upon which counsel could have sought the aforementioned jury instruction. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of these claims was contrary to clearly established principles, involved an objectively

44

unreasonable application of federal law, or was based on an unreasonable determination of the facts.

Therefore, Claims (Q) and (R) will be dismissed.

**Claim (S) and (T):**

Joyner next claims that counsel rendered ineffective assistance when counsel failed to object

to the jury poll and when counsel failed to move to quash the venire. Specifically, Joyner alleges

that the twelfth juror, when polled, "responded negatively" and that the Botetourt County Court

system purposely excludes African-Americans from juries. (Pet. at 113.)

The Supreme Court of Virginia fully considered and denied these claims noting:

> The Court holds that claim (3) (F) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, demonstrates that although the twelfth juror's response was not transcribed it was affirmative as the trial judge immediately announced that the verdict was unanimous. Under those circumstances, petitioner has failed to establish any valid basis for an objection by counsel. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.
>
> . . .
>
> The Court holds that this portion of claim (3) (F) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Petitioner fails to proffer any evidence to support his contentions concerning the racial demographics of Botetourt County or that the "master list" did not contain the names of any African-American jurors. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 17 -18 (Va. Oct. 4,

2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient

or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Simply because the twelfth juror's response was inadvertently not transcribed does not suggest that she "responded negatively." Indeed, the trial court listened to all of the responses and determined that the verdict was unanimous and Joyner provides no evidence, other than his own conclusory contentions, to the contrary. Moreover, Joyner fails to provide any proof at all that the Botetourt County Court system purposely excludes African-Americans from juries. Thus, counsel was not ineffective for failing to raise these frivolous arguments at trial. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of these claims was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claims (S) and (T) will be dismissed.

**Claim (U):**

Joyner next claims that appellate counsel rendered ineffective assistance when counsel failed to conduct an adequate investigation, present mitigating evidence, or proffer evidence that was missing from the record. Joyner appears to allege that counsel should have obtained more information concerning Linda Orange's mental status and the surveillance videotape from the Country Store.

The Supreme Court of Virginia fully considered and denied this claim noting:

> The Court holds that claim (4) (A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Petitioner fails to articulate, other than what has been previously raised and addressed, what additional action counsel should have taken to adequately investigate the facts. Petitioner also fails to describe the mitigation evidence he contends should have been presented and fails to identify the allegedly missing portions of the record. Thus, petitioner has

46

failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Joyner v. Director of the Department of Corrections, Record No. 070220, at 19 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that appellate counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Counsel is not required to assert every conceivable issue on appeal. The Supreme Court has recognized that it is good strategy to identify and present only the strongest issues and arguments on appeal. See Jones v. Barnes, 463 U.S. 745, 751-53 (1983). Joyner fails to adequately demonstrate that the issues raised by counsel on appeal were not the strongest arguments available to present. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of this claim was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claim (U) will be dismissed.

**Claims (V), (W), (X), and (Y):**

Joyner next alleges that counsel rendered ineffective assistance when counsel failed to object to the trial court's ruling that denied access to exculpatory material, failed to object to the trial court's denial of Joyner's motion for a continuance to allow Joyner to evaluate the surveillance videotape from the Country Store, failed to object to the trial court's denial of Joyner's motion to proceed pro se at trial, and failed to object to the trial court's denial of Joyner's motion for a new trial.

The Supreme Court of Virginia fully considered and denied these claims noting:

47

The Court holds that claim (5) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, demonstrates that the trial court appropriately denied Joyner's motion to represent himself because, at the time, Joyner was belligerent and uncooperative. There was no basis upon which counsel should have objected. The affidavit of counsel demonstrates that he was given full access to discovery and petitioner identifies no evidence that was withheld. Trial counsel objected to the denial of a continuance and appellate counsel raised the issue on appeal, where the Court of Appeals determined no error had occurred. Finally, a motion for a new trial "is not an integral part of the system for finally adjudicating the guilt or innocence of a defendant, and therefore, the petitioner has no right to counsel on such a motion." <u>Evitts v. Lucy</u>, 469 U.S. 387, 393 (1985). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 19-20 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. The only "exculpatory material" suggested by Joyner in his federal <u>habeas</u> petition concerns Linda Orange's mental health records and the surveillance videotape from the Country Store. This court has already determined that Orange's mental health records are not relevant and that the surveillance videotape was reviewed at trial. Moreover, it has already been determined that the trial court did not erroneously deny Joyner's motion for a continuance. Furthermore, it was not unreasonable for the trial court to deny Joyner's motion to proceed <u>pro se</u> because of his disruptive behavior. Thus, counsel was not ineffective for making motions for which there was no obvious basis. Finally, the record reflects that counsel Christopher Anderson, appointed subsequent to Geddes, adequately argued and presented a motion for a new trial.

48

Anderson raised many of the issues that Joyner raises in <u>habeas</u> petitions and the court determined that it was "not inclined . . . to usurp the function of the jury and change their verdict simply upon the basis of the inconsistencies in the testimony." (Sentencing Transcript at 22, Aug. 16, 2004 (hereinafter "Sentencing Tr.").) The court also "note[d]" Anderson's "objections for the record." (Sentencing Tr. at 22.) Thus, Joyner's contention that counsel was ineffective concerning the motion for a new trial is contradicted by the record. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of these claims was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claims (V), (W), (X) and (Y) will be dismissed.

**Claims (AA), (BB), and (CC):**

Joyner finally claims that counsel rendered ineffective assistance when counsel failed to raise the issue of prosecutorial misconduct. Joyner specifically alleges that the prosecutor violated a motion in limine agreement, made inflammatory closing arguments concerning Tina Joyner's testimony, and failed to disclose exculpatory evidence.

The Supreme Court of Virginia fully considered and denied these claims noting:

> The Court holds that claim (6) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the affidavit of trial counsel and counsel representing petitioner at the sentencing hearing and on appeal, demonstrates that neither counsel had a reasonable basis to believe that the prosecutor had engaged in misconduct. Furthermore, petitioner fails to provide any evidence to support his allegation that the prosecutor engaged in misconduct or withheld exculpatory evidence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

49

<u>Joyner v. Director of the Department of Corrections</u>, Record No. 070220, at 20-21 (Va. Oct. 4, 2007).

This court agrees that Joyner fails to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Joyner does not adequately or clearly articulate what motion in limine agreement was violated or how it was violated. Moreover, the Commonwealth was entitled to question Tina Joyner's credibility, and pointing out her alleged discrepancies during closing arguments was not inappropriate. Finally, Joyner fails to provide the court with any further alleged exculpatory evidence, not already considered and rejected by this court. Accordingly, the court finds that Joyner cannot demonstrate that the state court's rejection of these claims was contrary to clearly established principles, involved an objectively unreasonable application of federal law, or was based on an unreasonable determination of the facts. Therefore, Claims (AA), (BB) and (CC) will be dismissed.

### V. Conclusion

Accordingly, the court finds that Joyner is not entitled to § 2254 relief. Respondent's motion to dismiss will be granted and an appropriate Order issued this day. The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to petitioner and counsel of record for respondent.

ENTER: This 16th day of June, 2008.

_____
United States District Judge